UNITED STATES *v.* BOSCA REED MACKINNON CO. ET AL. (NO. 3644)[1]

United States Court of Customs and Patent Appeals, January 22, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument December 12, 1933, by Mr. Geisler and Mr. J. Stuart Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The Government has appealed from a judgment of the United States Customs Court, sustaining protest on behalf of importers, and holding certain leather, hereinafter more particularly described, to be entitled to free entry under the provision of paragraph 1606 of

---

[1] T. D. 46888.

the Tariff Act of 1922, for "all leather not specially provided for." The full paragraph reads as follows:

PAR. 1606. Leather: All leather not specially provided for; harness, saddles, and saddlery, in sets or parts, except metal parts, finished or unfinished, and not specially provided for; leather cut into shoe uppers, vamps, soles, or other forms suitable for conversion into manufactured articles; and leather shoe laces, finished or unfinished.

The merchandise was described by the appraiser in his "Answer to Protest," as "rough tanned hides" and was classified and assessed for duty by the Collector of Customs under that portion of paragraph 1431 of the Tariff Act of 1922, which reads:

PAR. 1431. * * * bag, strap, case, football, and glove leather, finished, in the white or in the crust, * * * other than shoe leather, 20 per centum ad valorem.

The merchandise in question was imported from England and was entered at Columbus, Ohio, which is a subport of the port of Cleveland, Ohio. The transactions on the part of the Government relating to the entry and appraisement of the merchandise seem to have been by a Mr. E. C. Henderson, who apparently acted in the dual capacity of deputy Collector of Customs and appraiser at the subport. The formal report transmitting the protest and papers to the trial court, however, is signed by the collector at the port of Cleveland, Ohio, who, in the report, stated, "The merchandise consisted of rough tanned hides assessed for duty at 20% under par. 1431 of the T.A. of 1922."

Mr. Henderson was called as a witness in the case by the Government, and, after certain testimony given as a Government witness, appellees' counsel, stating that he would make him appellees' witness also, examined him upon matters not brought out in his early testimony.

The testimony of this witness indicates that, as to at least some of the entries, the agent of one of the importers was required to add to that importer's description of the leather as rough tanned hides the words "bag leather" in parenthesis, the witness explaining that "unless we do that, our entries drawn up in that form, we cannot get them passed at the statistical bureau at New York." The witness added:

I would not have compelled it to be entered at 20 percent, from all our returns from samples submitted to New York it appeared to be foolish to enter it at 1606, when we know we are going to be compelled to increase the duty on it.

Mr. Henderson further states that he did not at any time make any personal investigation to determine the chief use in the United States of the kind of leather involved and that he did not claim to have any knowledge as an expert, or in his official capacity, concerning the chief use of the merchandise, other than as reported by the Customs Information Exchange.

In view of the testimony, the trial court states, in effect, that it might well be questioned whether the classification and assessment, since they followed the advisory classification by Mr. Henderson, are entitled to the full presumption of correctness that usually attaches to the collector's action. This will be adverted to later.

In numerous decisions of this court, many of which are cited in our opinion in the case of *United States* v. *Tausig & Pilcher, Chas. Redden,* 18 C.C.P.A. (Customs) 421, T.D. 44681, it has been uniformly held, as stated in the said *Tausig* case, that "the classification of leather as 'bag, strap, case, football, and glove leather,' depended upon the use to be made of such leather."

We further held in the *Tausig* case, *supra,* that the words "bag, strap, case, football, and glove leather," are subject to proof of commercial designation. The question of commercial designation, however, is not involved in the instant case, and determination of the issue, in the final analysis, rests upon the question of fact as to use.

The opinion of the trial court contains the following succinct statement of its conclusion as to the facts:

> In addition to the witness Henderson and the customs broker Enderle nine witnesses were called, who were each shown to have had more or less experience in importing, manufacturing, buying, and selling leather comparable with exhibit 1, and several of them in manufacturing pocketbooks and novelties therefrom. These witnesses, as might well be expected because of their diverse interests and experiences, differed in their opinions both as to the treatment to which the hides in issue, as represented by exhibit 1, had been subjected and the uses to which such leather had been or might be adapted. We think, however, that by an unmistakable preponderance, in weight, if not volume, the evidence sustains the contentions of the plaintiffs (1) that the leather in issue was from hides of cattle of the bovine species, (2) that it was fully tanned, (3) that, in addition to being so tanned, it was specially further processed to adapt it for use in the manufacture of pocketbooks and various kinds of novelties, and (4) that such treatments in addition to tanning made the leather unsuitable for use in the manufacture of bag, case, or strap leather.

The Government, insisting that the imported merchandise is leather in the crust, alleges numerous errors in its formal assignments of error, all of which (aside from certain assignments relating to the admission and exclusion of certain exhibits and testimony, which we do not regard as constituting reversible error) may be summed up as a contention that appellees failed to overcome the presumption of correctness, which it is insisted does attach fully to the collector's classification.

Upon the question of presumption of correctness, we do not understand the trial court to have held, expressly and positively, that it did not apply. Its statement is that "it might well be questioned" whether it applies fully in view of Mr. Henderson's testimony. It is our construction of the trial court's opinion that, even treating the rule as applicable, the evidence in the case was deemed sufficient to overcome the presumption.

As a matter of law, we regard the rule applicable in the instant case. The existence of the rule and the necessity therefor are matters so well-known and understood that comment and citation of authorities are deemed unnecessary. Legally, the acts of classification and assessment in this case were the acts of the Collector of Customs at Cleveland. The statute makes them such, and the testimony of Mr. Henderson, acting deputy collector and appraiser, that he made no personal investigation as to use and had no personal knowledge as an expert, or in his official capacity, concerning chief use may not be held to affect the applicability of the rule itself which exists as a rule of law. At most, his testimony upon this point can only be considered along with the other evidence in the case, in determining whether the presumption has been overcome; it may not be held to avoid or nullify the applicability of the rule itself.

There is no question but that the merchandise involved in the condition imported was made from hides of cattle of the bovine species, fully tanned, and then additionally treated. The real question appears to be whether the additional treatment or processing took the leather out of the class of bag, case or strap leather, and this is dependent upon the rule of use, as declared in the *Tausig* case, *supra*, following the many decisions there cited.

To state the issue somewhat differently, the question is whether the evidence introduced as to use overcomes the presumption inherent in the collector's classification as to its use for bag, case or strap leather.

This court is always extremely reluctant to reverse the trial court upon questions of fact, particularly in cases where, as here, its finding is agreed to by all the judges participating in the decision. This disposition is in accord with the usual disposition and practice of appellate tribunals. The trial court, as a rule, has opportunities for observing the witnesses which this court does not have. Its judges weigh the testimony in the light of the trial proceedings before them, and discharge their responsibilities under different circumstances from those which confront the appellate tribunals.

There are conflicts in the testimony in this case as to the suitability for use and the actual uses of the kind of merchandise here involved. The trial court has considered these conflicts and weighed the testimony. Its opinion expressly predicates its decision upon what it regarded as "an unmistakable preponderance, in weight, if not volume," of the evidence.

One may find testimony in the record contradictory of the factual conclusions of the trial court, but, on the other hand, there is also evidence which sustains those conclusions.

Upon the whole record, we are unwilling to disturb the court's findings upon the facts, and since the law, as announced in numerous

decisions, has been correctly applied under its findings of fact, we deem it proper that its judgment be sustained.

At the oral argument of the case before us, Government counsel offered the suggestion that the evidence in behalf of appellees did not specifically relate to the use of the merchandise at the time of and prior to the passage of the Tariff Act of 1922. This matter is not, however, made the subject of any assignment of error, nor does it seem to have been presented to the trial court.

The situation is, therefore, quite analogous to that which existed in the case of *United States* v. *Joseph G. Brenner Co.*, 19 C.C.P.A. (Customs) 105, T.D. 45243, where this court, speaking through Judge Lenroot, said:

Appellant has not specifically made, either in any assignment of error or in its brief or upon oral argument, the point that the evidence as to use of merchandise like that in question did not relate to the time of the enactment of the Tariff Act of 1922, and neither does it appear that such point was raised in the court below. The question of use being a question of fact, we think the failure of appellant to raise the question of the time of such use should be considered as, presumptively, an admission that the use of merchandise of the character here involved was the same in 1922 as it was during the period covered by the testimony.

The judgment of the United States Customs Court is *affirmed*.